## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALICIA MARIA MARQUEZ,** | § | |
| 7600 Chevy Chase Drive, #118 | § | |
| Austin, Texas 78752 | § | |
| *Plaintiff,* | § | |
| | § | **Case No. 1:20-cv-3225** |
| v. | § | |
| | § | |
| **MICHAEL RICHARD POMPEO,** | § | |
| **Secretary, U.S Department of State, in his** | § | |
| **official capacity,** | § | |
| United States Department of State | § | |
| 2201 C Street NW | § | |
| Washington, DC 20520 | § | |
| *Defendant.* | § | |
| | § | |

### COMPLAINT FOR DECLARATORY RELIEF

Alicia Maria Marquez ("Ms. Marquez"), through undersigned counsel, files this action for declaratory relief under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*., and 28 U.S.C. § 2201 (Declaratory Judgment Act).

Ms. Marquez acquired United States citizenship at birth as the child of two alien parents who frequently visited the United States for personal and business purposes. This is so because her mother, Maricela Lozano de Marquez, gave birth to Ms. Marquez on U.S. soil.

In 2009, Ms. Marquez applied for a United States passport at the San Antonio Passport & Birth Certificate office (719 S. Santa Rosa Ave. San Antonio, Texas 78204) and was requested to send additional supporting documentation, which she did mail promptly. Notwithstanding, her application was denied for lack of additional supporting documentation. In September of 2016,

1

Ms. Marquez once again applied for a passport. The United States Department of State

Charleston Passport Center determined that additional information regarding the factual

circumstances of her birth was necessary. Although Ms. Marquez sent all available requested

documentation, her second application was denied because her birth record was filed by a birth

attendant who is suspected of submitting false birth records. Pursuant to 5 U.S.C. § 701 et seq.

and 28 U.S.C. § 2201, Ms. Marquez brings this action requesting that this Court find and declare

that she is a citizen and national of the United States. In addition, Ms. Marquez alleges the pre-

deprivation procedures of the Department of State are unconstitutional.


## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), as a

civil action arising under the Constitution and laws of the United States. Ms. Marquez submits

that the denial of her United States Passport application violates her Fifth Amendment rights.

Relief is also sought under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* Declaratory

judgement is also sought pursuant to 28 U.S.C. §§ 2201 and 2202.

2.      Venue is proper under 28 U.S.C. § 1391(e) because the Secretary of State Michael

Pompeo, in his official capacity, is a defendant in this case.


## PARTIES

3.      Plaintiff Alicia Maria Marquez was born in San Angelo, Texas and currently

 resides in San Antonio, Texas.

4.      Defendant Michael Richard Pompeo, named in his official capacity,  is the duly appointed and confirmed Secretary of State of the United States. In his capacity, he is responsible for the issuance of United States passports.

## STATEMENT OF FACTS

5.      Ms. Alicia Maria Marquez was born on July 7, 1980 in San Angelo, Texas to Anastacio Marquez and Maricela Lozano de Marquez.

6.      Mr. Anastacio Marquez is a United States citizen.

7.      Mrs. Maricela Lozano de Marquez is a Mexican citizen, having been born in that country.

8.      At the time of Ms. Marquez's birth, her parents had border crossing cards[1]. They crossed often and freely between *Ciudad Acuña*, Mexico, where they resided, and Del Rio, Texas. On some occasions, the family would vacation in the United States. On one of those occasions (specifically, the Marquez's were invited to a 4th of July event by U.S. citizen relatives), Mrs. Marquez gave birth to her daughter and plaintiff, Ms. Marquez.

9.      After Ms. Marquez's birth, and no signs of complication, Ms. Marquez's parents returned with her to their home in *Ciudad Acuña*, Mexico. However, this was before registering Ms. Marquez's birth in the United States. Shortly after arriving back in Mexico, Ms. Marquez's parents registered her birth in Mexico and obtained a Mexican birth certificate.

10.      Although it was improper under Mexican law, it was common practice for Mexican nationals residing in Mexico with children born abroad to register them in Mexico,

---

[1] Alicia's father is now a US Citizen, because his mother was a US Citizen that met the presence test, although he was not aware of this until a few years ago, and immediately requested and obtained a US Passport.

particularly if they intended to raise the child in Mexico. This was a common practice because
dual citizenship did not formally exist. Under both Mexican and United States law, Ms.
Marquez would have been considered a stateless child without a birth certificate. As a stateless
child, Ms. Marquez would not have been able to attend school, own certain real estate[2], and
make use of the public health care system in Mexico.

11.     Ms. Marquez's parents did not obtain a birth certificate for Ms. Marquez within
the same year of her birth because shortly after her birth they returned to their home in *Ciudad
Acuña*, Mexico. The Petitioner's parents did not record her birth certificate in the United States
until October 28, 1982, when they were able to return to San Angelo, Texas.

12.     On May 22, 1982, Ms. Marquez was baptized. Her baptismal certificate states that
she was born in San Angelo, Texas on July 7, 1980. This record was created less than 2 years
after her birth, and qualifies as secondary evidence to establish her U.S. citizenship in
accordance with 22 C.F.R. § 51.42(b), which lists a baptismal certificate created shortly after
birth but generally not more than 5 years after birth as admissible secondary evidence of birth in
the United States. In addition, in 1988, Ms. Marquez received her First Holy Communion in Del
Rio, Texas. Ms. Marquez also received vaccinations from the Texas Department of Health,
beginning August 1983, and continuing through December 1986. Lastly, she attended
elementary school in the United States as a child, beginning in Kindergarten.

13.     In the past, dual registration in Mexico rarely, if ever, caused problems for such
children, even if they were initially registered in Mexico.

14.     Because having two birth certificates, one from the United States and one from
Mexico, was common practice, Ms. Marquez did not question whether it was proper or much

---

[2] Mexican law limits non-citizen's ownership rights of real property within 100 kilometers of any
border.

less, legal, to have dual citizenship. It was not until 2006, when Ms. Marquez was informed that

having two birth certificates was unlawful.

15.     In 2006, soon after learning that this was in fact an improper practice, and not the

appropriate process to record dual citizenship, Ms. Marquez filed a civil complaint to declare

the *inexistence* (annulment) of the Mexican birth certificate.

16.     Pursuant to 8 U.S.C. §§ 1401(a) (Nationals and Citizens of United States at Birth)

and the 14th Amendment to the United States Constitution, all persons born in the United States

are citizens of the United States. Since Ms. Marquez was born in the United States, she

attempted to exercise her rights and privileges as a United States citizen by applying for a

United States passport, which was unconstitutionally denied twice for lack of additional

supporting documentation by the Department of State.

17.     In 2009, Ms. Marquez applied for a United States Passport in San Antonio, Texas.

Ms. Marquez was asked to send additional supporting documentation regarding her birth in

Texas. Ms. Marquez proceeded to submit the requested documentation, including the Mexican

court order stating that the Mexican birth certificate had been fraudulent and had been canceled

and removed from the Mexican registry. However, her passport application was not approved.

18.     In September of 2016, Ms. Marquez once again applied for a passport. Ms.

Marquez received a letter from the United States Department of State Charleston Passport

Center dated October 17, 2016, stating that they had determined that additional information

regarding the factual circumstances of her birth was needed. This was because her birth record

was filed on October 28, 1982 by a birth attendant who is suspected of submitting false birth

records. Ms. Marquez proceeded to submit the requested documentation on January 11th of

2017, which included a statement that she had previously held a government position entrusted

to US Citizens only, as she has been employed by the National Security Agency (NSA) in the past.

19.     On February 2nd of 2017, Ms. Marquez received a voicemail message from the Charleston Passport Center stating that they had received the requested documentation, the information sent was good and helpful information, and that the application was looking "pretty good." They proceeded to request more information, particularly a statement explaining her Mexican birth certificate, and her earliest school transcripts. All this would be requested through a letter that Charleston Passport Center would proceed to mail.

20.     As expected, Ms. Marquez received a letter from the Charleston Passport center dated February 3 of 2017. This letter requested a statement explaining why the foreign document was filed and when/how Ms. Marquez became aware conflicting birth records existed. Additionally, pre/postnatal maternity records from Ms. Marquez's mother, official United States school transcripts for the petitioner and herself, and any early childhood records.

21.     On February 17 of 2017, Ms. Marquez  responded to the Department of State and mailed all of the requested documents.

22.     On February 27 of 2017, Ms. Marquez contacted the National Passport Information Center to inquire about her passport status and to confirm receipt of the documents she provided. She was told someone from Charleston Passport center would get in contact with her, and later that same day she received a call confirming the response and documentation had been received, but more evidence was needed. Ms. Marquez understood that the following documents needed to be sent:

● An affidavit signed by her parents explaining why they took more than 2 years to register her birth certificate;

● Any information regarding her mother's pre/postnatal care, and

● Records that demonstrate her mother's presence in the U.S. at the time of her birth.

23.     On February 28 of 2017, Ms. Marquez proceeded to send the requested documentation, however she was unable to provide some of the documentation. With regards to her mother's pre/postnatal care, she was unable to obtain documents from the clinic because the clinic has been permanently closed since approximately 1995, and the doctor in charge of her mother's pre and postnatal care unfortunately passed away in 1991. Furthermore, Ms. Marquez has been unable to obtain CBP records concerning her mother's presence in the U.S. because, unfortunately, CBP does not have records on the entry and exit of persons arriving or departing the U.S. before 1982.

24.     After a third unsuccessful response, Ms. Marquez contacted US Congressman Lloyd Doggett. Congressman Doggett's office contacted the Charleston agency on March 13th of 2017 and provided additional documentation, particularly affidavits from witnesses of her birth.

25.     Further information was asked for Ms. Marquez to submit. This included a translation of the Mexican Birth Certificate Cancelation, statement explaining why the Mexican birth certificate stated she was born in Mexico, and statement explaining why the fraudulent Mexican birth was cancelled.

26.     On February 23 of 2018, Ms. Marquez received a letter from the Director of the Charleston Passport Center indicating that the documentation that she provided to support her claim of birth in the United States was not sufficient to establish by a preponderance of the evidence that she was born in the United States. Although Ms. Marquez has provided extensive documentation to support that she is in fact a U.S. citizen, the Department of Homeland

Security denied her the right to obtain a U.S. passport and allow her to exit and enter her country freely.

27.     Ms. Marquez made numerous attempts to receive her passport on time because she had a very intimate event to attend, her sister's wedding.

28.     Ms. Marquez has family and friends in Mexico, and numerous common occupations and businesses of the community require that those who pursue them have the ability to engage in international travel. Unfortunately, Ms. Marquez is unable to because of the June 1, 2009 deadline of the Western Hemisphere Travel Initiative, ("WHTI"). 8 U.S.C. §1185(b); 3 U.S.C. §301; Exec. Order No. 13323, and 22 C.F.R. §53.2.

29.     Because the right to engage in international travel is a protected liberty interest, which, under WHTI, Ms. Marquez can no longer exercise without a U.S. passport, she was entitled to Due Process in the adjudication of her passport application.

30.     It was a denial of Due Process for the Defendants to deny Ms. Marquez's application for a passport based on not having provided enough documentation to support her claims of birth in the United States when she in fact did provide the required documentation and met her burden.

31.     The vast majority of U.S. citizens who apply for U.S. passports are afforded Due Process in the adjudication of their applications, and thereafter receive passports. Unfortunately, the regulations encourage a lack of Due Process in cases such as that of Ms. Marquez, by, *inter alia,* giving DOS unlimited discretion to request additional evidence in support of an application 22 C.F.R. §51.45. Therefore, creating the impression that DOS is justified in denying an application if the applicant is unable to provide the requested evidence, no matter how arbitrary and capricious the request.  As such, the Department of State considers affording Due Process

in adjudicating passport applications as discretionary. Although the Department of State refuses to grant Ms. Marquez, a United States citizen, a United States passport, this Court held recently in Bazzi v. Gacki, that a foreign national can bring a claim under the Administrative Procedure Act. See generally Bazzi v. Gacki, No. 1:19-cv-01940 (TNM), at *13 2020 WL 3448010 (D.D.C. Jun. 24, 2020). This Court also held that administrative law incorporates the Due Process Clause, and thus due process protections apply to administrative claims. Id at 14.

## CAUSE OF ACTION

## ADMINISTRATIVE PROCEDURES ACT
## 5 U.S.C. § 701 ET SEQ.

32.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-31 above.

33.     The Secretary of State is authorized to grant and issue passports. 22 U.S.C. §§ 211a and 211; 22 C.F.R. § 51, et seq. The Secretary of State is also empowered to deny passports under certain circumstances. 22 C.F.R. § 51.60, et seq.

34.     Defendants wrongfully denied Ms. Marquez's United States passport application in violation of 5 U.S.C  U.S.C. § 706(2).

## FIFTH AMENDMENT TO THE
## U.S. CONSTITUTION

35.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-31 above.

36.     Plaintiff also submits that the lack of fair and meaningful pre-deprivation procedures for reviewing a United States passport application violates her rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution

37.     Plaintiff submits that the lack of fair and meaningful deprivation procedures for denying a United States passport violates her rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.


**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

A.  Assume jurisdiction over this action;

B.  Issue a declaratory judgment declaring Alicia Maria Marquez is a United States citizen and national who is entitled to the rights and privileges of citizenship, including a United States passport;

C.  Declare that the Defendant wrongfully denied Ms. Marquez's United States passport because the pre-deprivation procedures are in violation of the U.S Constitution;

D.  Order Defendant to issue a United States passport to Ms. Marquez;

E.  Award Plaintiff her costs and attorney's fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute; and,

F.  Grant such other and further relief to which Plaintiff may be justly entitled.

Dated: November 9, 2020

Respectfully submitted,


/s/ Brian S. Seal
Brian Sherwood Seal
BUTZEL LONG
1909 K Street, NW
Washington, DC 20006
Email: seal@butzel.com
Phone: (202) 454-2856
Fax: (202) 454-2805
Bar ID: 485912


**ATTORNEY FOR PLAINTIFF ALICIA MARIA MARQUEZ**


**VERIFICATION**


I, Alicia Maria Marquez, certify under penalty of perjury that the foregoing is true and correct.
Executed on November 5, 2020.

_____ 11/5/2020
Alicia Maria Marquez