### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALICIA MARIA MARQUEZ**, )<br><br>Plaintiff, )<br><br>v. )<br><br>**MICHAEL R. POMPEO**, *Secretary, U.S* )<br>*Department of State, in his official capacity*, )<br><br>Defendant. )<br>) | Civil Action No. 20-cv-3225 (TSC) |

### MEMORANDUM OPINION

Plaintiff Alicia Maria Marquez brings this action against now-former Secretary of State Michael Pompeo, alleging that Defendant and the United States Department of State ("State") unlawfully denied her passport application in violation of the Administrative Procedures Act ("APA") and the Fifth Amendment Due Process Clause. Defendant has moved to dismiss Plaintiff's lawsuit. ECF No. 11, Def. Mot. For the reasons explained below, the court will GRANT Defendant's motion to dismiss.

### I. BACKGROUND

Plaintiff alleges that she was born on July 7, 1980, in San Angelo, Texas, but did not receive a U.S. birth certificate at that time because shortly after her birth she and her parents returned to Mexico, where they registered her birth and obtained a Mexican birth certificate. ECF No. 1, Compl. ¶¶ 5, 9. In 1982, Plaintiff and her family returned to the United States, at which point they recorded her birth in the United States and Plaintiff obtained a U.S. birth certificate. *Id.* ¶ 11. It is unclear how long Plaintiff resided in the United States between 1982 and 1999, but she claims that she at least periodically traveled to the United States during that time to receive vaccinations, her First Holy Communion, and to attend elementary school. *Id.* ¶

1

12.  Plaintiff alleges that more recently, since 1999, she has lived in San Antonio, Texas.  ECF No. 13, Pl. Opp'n at 5.  She asserts that in 2006 she learned that it is unlawful to have two birth certificates, and consequently filed a civil complaint in Mexico to have her Mexican birth certificate annulled.  Compl. ¶ 15.

On January 9, 2009, Plaintiff applied for a U.S. passport.  *Id*. ¶ 17; Def. Mot. at 2.  In support of her application, she submitted a copy of her U.S. birth certificate issued by the Texas Bureau of Vital Statistics, which states that Plaintiff was born in 1980, in San Angelo, Texas.  Def. Mot., Ex. 1.  On June 22, 2009, State responded that it suspected the birth attendant who filed Plaintiff's birth certificate in 1982 of submitting false birth records, and asked Plaintiff to provide supplemental documentation in support of her application.  *Id.*  On September 16, 2009, Plaintiff provided supplemental information, but State found the additional documentation insufficient to show by a preponderance of evidence that Plaintiff was born in the United States.  *Id.*  State further noted that Plaintiff's birth record was flagged as having been filed fraudulently.  *Id.*  Consequently, it denied Plaintiff's application, but informed her that she could submit additional documentation to support her application and request re-adjudication within 60 days of receiving the denial.  Plaintiff subsequently submitted additional evidence and requested re-adjudication of her application, and in March 2010, State affirmed its denial decision.  *Id.*, Ex. 2.

On August 24, 2016, Plaintiff submitted a second passport application.  Compl. ¶ 18; Def. Mot., Ex. 3.  State again asked Plaintiff to submit supplemental evidence in support of her application, which she did on January 13, February 22, and March 3, 2017.  Def. Mot., Ex. 3.  She also participated in telephone interviews with State officials on February 27 and June 29, 2017.  *Id.*  In 2018, State denied Plaintiff's second application, again noting that her birth record

was flagged as fraudulently filed and that she had not provided sufficient evidence to otherwise show that she was born in the United States. *Id.*

Plaintiff seeks a declaration from the court that she is a U.S. citizen and that State wrongly denied her passport application using procedures that violated her constitutional rights. *See* Compl. at 10. Defendant has moved to dismiss, arguing that Plaintiff's APA claim is precluded because 8 U.S.C. § 1503(a) provides her with an adequate alternative remedy, that her APA claim is time-barred, that she fails to state a valid Fifth Amendment claim for relief, and that this court is not the proper venue for this lawsuit. Defendant asks the court to dismiss this action in full or, in the alternative, transfer any valid claims to the Western District of Texas.

## II. <u>LEGAL STANDARD</u>

Federal courts have limited jurisdiction and those limits are especially important in the agency review context, where "Congress is free to choose the court in which judicial review of agency decisions may occur." *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (internal quotation marks and citation omitted). The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### A. <u>Lack of Subject Matter Jurisdiction</u>

In evaluating a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139

(D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  And "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  The court must "grant dismissal if it lacks subject matter jurisdiction" because it is both an Article III and statutory requirement. *Xia v. Pompeo*, No. 1:14-cv-57-RCL, 2019 WL 6311912, *9 (D.D.C. Nov. 5, 2019) (citing *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The court lacks subject matter jurisdiction when a plaintiff has failed to "exhaust their administrative remedies before the agency." *Id*.

### B.  Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) for failure to state a claim "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint should state a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. of Civ. Proc. 8(a)(2).  The complaint must contain enough facts to state a claim that is plausible on its face by alleging facts that, if assumed to be true, would allow the court to draw "reasonable inference[s] that the defendant is liable for the misconduct alleged." *Bell Atl. Co. v. Twombly*, 550 US 544, 555-56 (2007); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *Ashcroft v. Iqbal*, 556 US 662, 677-78 (2009).  The court presumes the truth of a plaintiff's factual allegations, *see Iqbal*, 556 U.S. at 679, and construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471 (D.C. Cir. 2012) (internal quotation marks omitted).

**C.  Improper Venue**

Under Rule 12(b)(3), a court may dismiss or transfer a case if the venue is improper or inconvenient.  Fed. R. Civ. P. 12(b)(3).  Venue is proper: (1) in a district where "any defendant resides, if all defendants are residents of the state in which the district is located;" (2) in a district in which "a substantial part" of the events giving rise to the suit occurred; or (3) if venue would not be proper in any district for either of those reasons, wherever the defendants are subject to personal jurisdiction.  28 U.S.C. § 1391(b).  "'When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b).  If it does, venue is proper,' but, 'if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).'"  *King v. Caliber Home Loans, Inc*., 210 F. Supp. 3d 130, 133-34 (D.D.C. 2016) (alteration removed) (quoting *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 50 (2013)).  Whether to transfer or dismiss the case is within the "sound discretion of the district court."  *Hamilton v. JP Morgan Chase Bank*, 118 F. Supp. 3d 328, 333 (D.D.C. 2015).

## III.  ANALYSIS

**A.  APA Claim**

The APA permits judicial review of agency actions when a plaintiff suffers a "legal wrong because of agency action" or when they are "adversely affected or aggrieved" by that action.  5 U.S.C. § 702.  But Congress did not intend this "general grant of review . . .  to duplicate existing procedures for review of agency action," or "provide additional judicial remedies in situations where . . . Congress has provided special and adequate review procedures."  *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  When an alternative remedy exists, a court may not review agency action under the APA or exercise its authority to "hold

5

unlawful and set aside agency action."  5 U.S.C. § 706(2).  If a plaintiff fails to exhaust their administrative remedies, the court lacks subject matter jurisdiction over the claim.  *Xia*, 2019 WL 6311912, at *11.

In assessing whether there is an adequate, alternative remedy, courts "look for clear and convincing evidence of legislative intent to create a special alternative remedy."  *Citizens for Resp. & Ethics in Wash. v. United States DOJ*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (internal quotations omitted).  An adequate remedy exists when "Congress has provided 'an independent cause of action or an alternative review procedure,'" *id*. at 1245 (quoting *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)), and where the alternative provides "for *de novo* district-court review of the challenged agency action," *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citations omitted).  Because the APA requires only an "adequate" alternative, the purported "'alternative remedy need not provide relief identical to relief under the APA' in order to have preclusive effect."  *Citizens for Resp. and Ethics in Wash.*, 846 F.3d at 1245 (quoting *Garcia*, 563 F.3d at 522).

Defendant argues that 8 U.S.C. § 1503(a) precludes review of Plaintiff's APA claims because the statute provides her with an adequate alternative remedy.  Section 1503(a) outlines the process by which an individual can obtain judicial review of an agency's decision denying them "a right or privilege as a national of the United States" because they are "not a national of the United States."  8 U.S.C. § 1503(a); *see also Xia v. Tillerson*, 865 F.3d 643, 655 (D.C. Cir. 2017) (explaining that section 1503 "provides for judicial review of denial of any 'right or privilege' of citizenship, including invalidations of passports or naturalization certificates").  If, as is the case here, an aggrieved party is "within the United States," that individual may seek a

6

judgment declaring her to be a national of the United States from the federal district court in the district in which she resides.  8 U.S.C. § 1503(a).

The court agrees that section 1503(a) provides an adequate alternative remedy for Plaintiff's APA claim.  Courts have consistently dismissed APA claims challenging the denial of a passport application or a passport revocation on grounds that the holder is not a U.S. national, reasoning that a judicial declaration of citizenship and entitlement to a passport may be directly sought through 8 U.S.C. § 1503(a).  *See, e.g.*, *Xia v. Tillerson*, 865 F.3d 643, 655 (D.C. Cir. 2017) (stating that 8 U.S.C. § 1503(a) "provides plaintiffs an adequate avenue to assert their citizenship claims"); *Ali v. U.S. Dep't of State*, Case No. 20-01436 (RJL) 2021 WL 1026068, at *3 (D.D.C. Mar. 17, 2021) (dismissing plaintiff's APA claim challenging revocation of passport because section 1503 provides adequate alternative remedy); *Alsaidi v. U.S. Dep't of State*, 292 F. Supp. 3d 320, 326 (D.D.C. 2018) (same with respect to denial of passport renewal); *Hassan v. Holder*, 793 F. Supp. 2d 440, 445-46 (D.D.C. 2011) (same with respect to passport revocation). Indeed, in a similar case, this court held that section 1503(a) provides an adequate alternative remedy to an APA claim where the claimant sought review of State's decision to revoke his passport.  *See Alzokari v. United States Dep't of State*, No. 20-cv-937-TSC, 2021 WL 4622459 (D.D.C. October 7, 2021).  For a remedy to be "an adequate alternative," it "need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"  *Garcia*, 563 F.3d at 522 (citation omitted).  The relief offered by section 1503(a) is certainly of the "same genre" of relief that Plaintiff seeks because it produces "effectively the same result—a determination that the State Department must treat plaintiff as if [s]he is a U.S. national."  *Ali*, 2021 WL 1026068, at *4.

Plaintiff argues that because section 1503 states that individuals "may" seek a declaration that they are a U.S. national in the district where they reside, the statute is designed to be a permissive option, rather than a mandatory alternative to judicial review under the APA.  Pl. Opp'n. at 14.  According to Plaintiff, the statute's permissive language indicates that Congress did not intend for section 1503(a) to be an "exclusive remedy" for someone denied a right of citizenship.  *Id.*  In support, Plaintiff relies on case law interpreting the interplay of the APA and two different sections of 8 U.S.C. § 1503: sections 1503(b) and (c).  *See* Pl. Opp'n at 13-15 (citing *Rusk v. Cort*, 369 U.S. 367, 379 (1962) (holding that section 1503(b) and (c) are permissive remedies to denials of rights of citizenship, not mandatory alternatives to an APA claim); *Boisson v. Pompeo*, 459 F. Supp. 3d 7, 14-15 (D.D.C. 2020) (relying on *Rusk v. Cort* and explaining that individuals outside the United States are not confined to sections 1503(b) and (c) when they have been denied a right of citizenship)).  Plaintiff's argument is unavailing.

By its terms, section 1503 establishes two paths by which a person denied "a right or privilege as a national of the United States" on the ground that they are not, in fact, a U.S. national "may" challenge that denial.  8 U.S.C. § 1503(a)-(c).  The first path—provided by section 1503(a)—is available only to persons "within the United States," such as Plaintiff, and it allows such persons to initiate a declaratory judgment action against the government in federal court.  *Id.* § 1503(a).  The second path—provided by sections 1503(b) and (c)—is available to persons outside the United States and is considerably more complicated and onerous than the first.  Whereas a person "within the United States" may simply bring a declaratory judgment action against the Secretary of State, a person outside the United States must obtain a certificate of identity from a United States diplomatic or consular office, then travel to the United States to apply to the Attorney General for admission, be subjected to removal proceedings and possible

detention, and if granted admission, may then bring a declaratory judgment action.  *Id.* § 1503 (a)-(c).

In *Rusk v. Cort*, the Supreme Court considered whether a person outside the United States denied a right of citizenship could only challenge that denial through the procedures in sections 1503(b) and (c).  *Cort*, 369 U.S. at 375.  The Court held that the availability of relief under the onerous provisions of sections 1503(b) and (c) does not preclude someone from bringing an APA claim.  *Id.*  It explained that Congress did not intend for a plaintiff to have to "travel thousands of miles, be arrested, and go to jail in order to attack an administrative finding that he is not a citizen of the United States."  *Id.*  Moreover, it noted that a suit under 1503(b) or (c) would culminate in litigation against the Attorney General, rather than the Secretary of State, whose citizenship decision the plaintiff sought to challenge.  *Id.*

The remedial scheme provided for in section 1503(a) differs in material respects from sections (b) and (c).  Section 1503(a) does not require the aggrieved party to obtain a certificate of identity, travel to the United States, or submit to removal proceedings and possible detention.  And it permits the aggrieved party to bring a declaratory judgment action against the Secretary of State, rather than filing a habeas petition challenging the Attorney General's separate decision to deny admission into the United States.  These factors "played a role in the Supreme Court's decision in *Cort*, and *Cort* itself did not address the availability of the APA to bring a challenge to the revocation of a passport or other evidence of U.S. citizenship by a 'person who is within the United States.'"  *Chacoty v. Pompeo*, 392 F. Supp. 3d 1, 12 (D.D.C. 2019) (quoting 8 U.S.C. § 1503(a)).  And, as noted, courts have consistently held that § 1503(a) is not simply a permissive remedy; rather, when a person within the United States seeks to challenge the Secretary of State's citizenship decision or the denial or revocation of a passport, they must do so

under section 1503(a).  Such is the case, here, and consequently the court lacks subject matter jurisdiction over Plaintiff's APA claim.[1]

**B.  <u>Fifth Amendment Claim</u>**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  In the context of an agency decision, the government must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Notice is sufficient when it "reasonably convey[s] the required information" and allows "a reasonable time" for parties to act.  *Id.* (citations omitted).

Plaintiff argues that State, in denying her application for a U.S. passport, infringed on her right to engage in international travel, which she claims is a protected liberty interest, and that State did so without affording due process required by the Fifth Amendment.  Compl. ¶¶ 28-31. According to Plaintiff, State's procedures were insufficient because State denied her application despite her submitting "the required documentation" and meeting her burden.  *Id.* ¶ 30.

Defendant responds that Plaintiff fails to state a valid Fifth Amendment claim because she does not identify what process or procedure she was denied.  Def. Mot. at 11-12.  In the alternative, Defendant argues that even if Plaintiff has identified such a procedure, State's passport denial process was valid because it gave Plaintiff sufficient notice of the potential

---

[1] Defendant also argues that Plaintiff's APA claim must be dismissed because it is time-barred. *See* Def. Mot. at 9-10.  But because the court will grant Defendant's motion to dismiss Plaintiff's APA claim because it is precluded by an adequate alternative remedy, it need not consider whether Plaintiff's APA claim is untimely.

denial, allowed her to submit supplemental evidence, and gave her the opportunity to request re-adjudication of the denial decision.  *Id.*  The court agrees.

"At a minimum, a procedural due process claim 'requires the plaintiff to identify the process that is due.'"  *Medina v. D.C.*, 517 F. Supp. 2d 272, 281 (D.D.C. 2007) (quoting *Doe v. Dist. of Columbia*, 93 F.3d 861, 870 (D.C. Cir. 1996)); *see also Elkins v. Dist. of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) ("To state a procedural due process claim, a complaint must suggest 'what sort of process is due.'").  Plaintiff's Complaint, however, is devoid of any allegations asserting what process or procedures she was due but was not granted.  Instead, her allegations regarding the alleged due process violation consist solely of conclusory assertions that "[i]t was a denial of Due Process . . . to deny [Plaintiff's] application for a passport based on not having provided enough documentation to support her claims of birth in the United States when she in fact did provided the required documentation and met her burden," Compl. ¶ 30, and that she was deprived "fair and meaningful pre-deprivation procedures," *id.* ¶¶ 36-37.  These bare-bones allegations do not meet the threshold requirement of identifying the process that is due.  *See Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7, 19 (D.D.C. 2020) (dismissing plaintiff's due process claim where "the only allegations in [the plaintiff's] complaint regarding [the due process] argument [were] . . . 'that the lack of fair and meaningful post-deprivation procedures for adjudicating the revocation of a United States passport' violates the Due Process Clause."); *Lewis v. Gov't of the D.C.*, 161 F. Supp. 3d 15, 30–31 (D.D.C. 2015) (dismissing plaintiff's due process claims "[b]ecause [the complaint] is devoid of allegations as to the actual process purportedly denied . . . , the [complaint] does not raise [plaintiff's] procedural due process claim 'above the speculative level' to the realm of plausibility.").  Consequently, Plaintiff's Complaint does not state a valid Fifth Amendment claim.

In her opposition to Defendant's motion to dismiss, Plaintiff both changes and adds to the allegations in her Complaint.  First, while she summarily asserted in her Complaint that State's *pre*-deprivation procedures were inadequate, in her opposition brief, she shifts course and argues that State's *post*-deprivation procedures were deficient because "the Department did not provide the Plaintiff with a hearing after denying her passport application."  Pl. Opp'n at 18.  Second, for the first time in her opposition brief, Plaintiff adds a substantive due process argument, claiming that State's denial of her passport application was an exercise of "governmental power that shocks the conscience."  *Id.* at 19 (citing that *Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp. 3d 491, 499 (D.D.C. 2018)).

Plaintiff cannot amend her Complaint by adding factual allegations and claims in a responsive brief.  *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011); *see also Abusadeh v. Chertoff*, No. 06-cv-2014-CKK, 2007 WL 2111036, at *7 (D.D.C. July 23, 2007) (explaining that a plaintiff cannot overcome a motion to dismiss by "simply add[ing] factual allegations sufficient to state a claim" in an opposition); *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 54 (D.D.C. 2019) (rejecting plaintiff's attempt to "recharacterize their claim against the agency" through its opposition to defendant's dispositive motion); *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").  Accordingly, Plaintiff's allegations regarding State's post-deprivation procedures and her substantive due process rights—raised only in opposition to Defendant's motion to dismiss—do not resurrect her deficient Complaint.

In any event, Plaintiff's newly added allegations still fall short of establishing a valid Fifth Amendment claim.  Plaintiff is correct that due process requirements have been satisfied in cases where the government provides a statement of reasons for a passport revocation and an opportunity for a post-revocation hearing, *see* Pl. Opp'n at 18 (citing *Boisson*, 459 F. Supp. 3d at 18); however, Plaintiff does not point to any authority that says due process *requires* that the government provide a passport applicant the opportunity for a post-denial hearing.  Due process analysis "generally requires not application of broad per se rules, but a weighing of factors." *Agee v. Baker*, 753 F. Supp. 373, 387 (D.D.C. 1990); *see also Matthews v. Eldridge*, 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands.").

The "relevant standard for evaluating what process is due is the *Matthews v. Eldridge* three-factor test."  *Boisson*, 459 F. Supp. 3d at 19 (citing *Matthews*, 424 U.S. at 335).  That test requires courts to consider (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Matthews*, 424 U.S. at 335.

The private interest at stake is Plaintiff's liberty interest in international travel using a U.S. passport.  *See* Compl. ¶¶ 28-29.  While this interest is significant, it is "outweighed by the government's interest in preventing passport fraud and by the fact that the procedures afforded adequately mitigate the risk of an erroneous deprivation of her interest."  *Boisson*, 459 F. Supp. 3d at 20.  As to the second factor, Plaintiff does not offer any facts or argument—neither in her

Complaint nor in her opposition brief—showing how the procedures offered were inadequate or what probable value a post-denial hearing would provide.  In 2009, after the government informed Plaintiff that it suspected the birth attendant who filed her birth certificate of submitting false birth records, the government—in June and December 2009—gave Plaintiff the opportunity to submit supplemental support for her application, and allowed her to request re-adjudication, which she did and which the government provided.  Def. Mot. at Ex. 2.  In 2016, the government similarly gave Plaintiff the opportunity to submit supplemental documentation in support of her application and conducted two phone interviews with Plaintiff.  *Id.* at Ex. 3.  Plaintiff must offer some reason why these procedures were inadequate to protect against an erroneous deprivation of her interest, *Boisson*, 459 F. Supp. 3d at 20, but she has not done so.

Plaintiff's substantive due process argument similarly falls short.  To constitute a substantive due process violation, the official conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006)).  Plaintiff, for the first time in her opposition to Defendant's motion to dismiss, argues that "the Department's conduct did unjustifiably rise to the conscience-shocking level."  Pl. Opp'n at 19.  In support of this argument, she makes only the cursory assessment that she provided sufficient evidence to prove her citizenship status.  *Id.* at 19-20.  That assessment alone, however, is not enough to state a substantive due process claim.  *See Hamal v. U.S. Dep't of Homeland Sec.*, No. CV 19-2534 (RC), 2020 WL 2934954, at *4 n.3 (D.D.C. June 3, 2020) (dismissing substantive due process claim where claim was based on conclusory assertion that the denial of his I-140, Immigrant Petition for Alien Worker violated his substantive due process right).  Accordingly, to the extent Plaintiff alleges a substantive due process violation, it is insufficient to state a valid claim for relief.

**C. <u>Venue</u>**

Defendant also argues that the court should dismiss this case because this court is an improper venue and, in the alternative, that the court should transfer the case to the Western District of Texas, where Plaintiff resides.

The court does not reach the question of whether venue here is appropriate because, as explained above, the court lacks subject matter jurisdiction over Plaintiff's APA claim and Plaintiff has failed to state a valid Fifth Amendment claim. *See Fermin v. United States*, 268 F. Supp. 3d 228, 233 (D.D.C. 2017) (explaining that the court need not reach venue when it has already determined that there is no subject matter jurisdiction). Nor must the court transfer this case to another court. The decision to dismiss or transfer a case is committed to the "sound discretion of the district court." *Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397, 408 (D.D.C. 2017). Dismissal "is often appropriate when the outcome is foreordained," *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997), or the complaint has serious "substantive problems," *Buchanan v. Manley*, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998). The substantive problems with Plaintiff's Complaint, detailed above, are indeed serious and counsel in favor of dismissal. *See Kungle v. State Farm, Fire & Cas. Co.*, 48 F. Supp. 3d 67, 76 (D.D.C. 2014) (denying request to transfer venue where the plaintiff failed to adequately plead causes of action). Consequently, the court will not transfer Plaintiff's lawsuit.

## IV. CONCLUSION

For the reasons explained above, the court will grant the Defendant's motion to dismiss.

Date: January 5, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge